UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.      23-CR-40003-MRG |
| | ) | |
| CHARLIE VICK | ) | |
| | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

### FACTUAL BACKGROUND[1]

According to reports and body worn camera, on February 19, 2023, North Providence Police took a report from a woman who stated that Charlie Vick tossed a bucket of cleaning fluid over her and threatened her with a firearm. According to the North Providence police, the woman provided photographs of Mr. Vick and photographs of a firearm. They obtained a warrant for Mr. Vick's arrest. On February 20, 2023, the Rhode Island Violent Fugitive Task Force requested assistance from Massachusetts State Police Violent Fugitive Apprehension Section in locating and apprehending Mr. Vick. On February 21, 2023, officers learned that Mr. Vick would be in the area of 583 Quaker Highway (Kitchen & Bath Gallery) in Uxbridge, Massachusetts. Officers set up in that area and conducted surveillance. At approximately 6:53am, officers observed Mr. Vick pull into the parking lot of 583 Quaker Highway in a blue Nissan Altima. Mr. Vick pulled into a parking spot, exited the vehicle, and walked towards the side entrance of the building. At that time, Mr. Vick was approached by officers and placed under arrest.

---

[1] The facts contained herein are not admitted hereby and are assumed arguendo for the purpose of this memorandum.

Once placed under arrest, Trooper Dolan, without providing Miranda warnings,[2] asked Mr. Vick if he had his keys on him, another officer then asked Mr. Vick how he got there. Trooper Andrews then asks, "Hey Charlie, what car you driving now?" Mr. Vick mades various statements throughout the interaction, including but not limited to, denying he had the keys or that he drove himself. These statements are made throughout the interaction until his arrival at the Millbury State Police barracks. Mr. Vick's Miranda warnings were not read prior to his arrival at the State Police barracks.

## **ARGUMENT**

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that statements are "generally inadmissible against a defendant if obtained during "custodial interrogation" without prior warnings that the suspect "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." <u>Miranda</u>, 384 U.S. at 444, 86 S.Ct. 1602 (1966), <u>U.S. v. Ellison</u>, 632 F.3d 727 (1st Cir. 2010). Miranda warnings must be given before a suspect is subjected to custodial interrogation. <u>United States v. Taylor</u>, 985 F.2d 3, 7 (1st Cir.1993). The custodial interrogation inquiry necessarily demands determination of its two subsidiary components: 1) custody and 2) interrogation. U.S. v. Ventura, 85 F.3d 708 (1st Cir. 1996) See <u>Illinois v. Perkins</u>, 496 U.S. 292, 297, 110 S.Ct. 2394, 2397-98, 110 L.Ed.2d 243 (1990) ("It is the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation.") The court must determine "from the perspective of a reasonable person in the suspect's shoes whether there was 1) a formal arrest or restraint on

---

[2] The body worn camera footage displays this entire interaction.

freedom of movement of the degree associated with a formal arrest and 2) express questioning or its functional equivalent." U.S. v. Ventura, 85 F.3d 708 (1st Cir. 1996).

## I.    THE DEFENDANT WAS IN CUSTODY AT THE TIME OF QUESTIONING.

As an initial matter, it is clear that at the time of questioning Mr. Vick was in custody as he was in handcuffs and formally placed under arrest, being informed that the reason for his arrest was a "warrant arrest." Additionally, there were numerous law enforcement officers surrounding him at any given time. The environment and circumstances suggest that a reasonable person in Mr. Vick's position would not have felt free to terminate the interrogation and leave. United States v. Monson, 72 F.4th 1 (1st Cir. 2023), citing Howes v. Fields, 565 U.S. 499, 509, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012). Therefore, the question for this court then becomes whether Mr. Vick was subject to an interrogation thereby requiring the recitation of the Miranda warnings.


## II.    THE DEFENDANT WAS SUBJECTED TO AN INTERROGATION THEREBY REQUIRING RECITATION OF MIRANDA WARNINGS.

The defendant, being in custody and subject to a formal arrest, was subject to questioning by arresting officers. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). The functional equivalent of questioning includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. (footnotes omitted).  Therefore, the inquiry is objective and the question is: "how would the officer's statements and conduct be perceived by a

reasonable person in the same circumstances?" U.S. v. Ventura, 85 F.3d 708 (1st Cir. 1996);
United States v. Taylor, 985 F.2d 3, 7 (1st Cir.1993).

Mr. Vick was subject to the functional equivalent of express questioning. He was
approached by numerous law enforcement officers from various agencies outside his place of
employment, immediately put in handcuffs and informed there was a warrant for an arrest. Even
after being placed in handcuffs, he continued to be in the presence of numerous officers, and
"[o]nce an individual is in custody, police must advise the arrestee of his or her constitutional
rights before interrogation." Miranda v. Arizona, 384 U.S. 436, 467–68, 86 S.Ct. 1602, 16
L.Ed.2d 694 (1966).  Mr. Vick was continuously trying to ask what was going on, what the
warrant was for, and at no point did any law enforcement officer read him his Miranda warnings.
Trooper Dolan (who had knowledge about the underlying basis for the warrant according to his
report) then proceeded to ask Mr. Vick if he had his keys. Another officer asked how Mr. Vick
got there. Mr. Vick told officers he did not have the keys and that his friend gave him a ride.
Trooper Andrews then stepped in front of Mr. Vick and asks, "Hey Charlie, what car you driving
now?" and Mr. Vick responds, "I'm not driving." This persistent questioning by law enforcement
officers about how Mr. Vick got there and what car he was driving was not communication that
is  "'normally attendant to arrest and custody'" and therefore is "'interrogation'" as the word is
understood by Miranda. Innis, 446 U.S. at 301; United States v. Li, 206 F.3d 78 (1st Cir. 2000).
The questioning was of the nature that the officer's knew or should have known it would be
reasonably likely to elicit an incriminating response from Mr. Vick. They were pointed questions
and called for a response from him. Additionally, the questioning was persistent and officer's
would not accept Mr. Vick's initial answer. Contrast United States v. Sweeney, 887 F.3d 529 (1st
Cir. 2018) (No interrogation found where the defendant asked the arresting officer a question, the

officer responded, and the officer's comment did not require a response). The assertion that it was questioning that the officers should have known would be reasonably likely to elicit an incriminating response from Mr. Vick is further evidenced by the officers strategically establishing surveillance on the Nissan Altima they suspected Mr. Vick of driving, after he was placed into custody and removed from the scene.

## **CONCLUSION**

Wherefore, the defendant was subjected to a custodial interrogation, and should have been read his Miranda warnings prior to that interrogation. Therefore, all statements must be suppressed, along with any evidence seized as a result of said statements as Fruit of the Poisonous Tree. <u>Miranda v. Arizona</u>, 384 U.S. 436, 467–68, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966;  <u>Wong Sun v. U.S.</u>, 371 U.S. 471 (1963).

Respectfully submitted,
Charlie Vick

By:     */s/ Richard J. Farrell* .
Farrell|Fernandez, P.C.
MA BBO# 638017
47 Harvard Street
Worcester, MA  01609
508.393.3600
Richard.Farrell@yahoo.com

Dated: April 1, 2024

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing on this date.

*/s/ Richard J. Farrell*
Richard J. Farrell

Dated: April 1, 2024