UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                        ) | Docket No.   23-CR-40003-MRG |
| ) | |
| CHARLIE VICK               ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS WARRANTLESS SEARCH AND SEIZURE**

**FACTUAL BACKGROUND[1]**

According to reports and body worn camera, on February 19, 2023, North Providence Police took a report from a woman who stated that Charlie Vick tossed a bucket of cleaning fluid over her and grabbed his firearm and pointed it at her head. They obtained a warrant for Mr. Vick's arrest. On February 20, 2023, the Rhode Island Violent Fugitive Task Force requested assistance from Massachusetts State Police Violent Fugitive Apprehension Section in locating and apprehending Mr. Vick. On February 21, 2023, officers learned that Mr. Vick would be in the area of 583 Quaker Highway (Kitchen & Bath Gallery) in Uxbridge, Massachusetts. Officers set up in that area and conducted surveillance. At approximately 6:53am, officers observed Mr. Vick pull into the parking lot of 583 Quaker Highway in a blue Nissan Altima. Mr. Vick pulled into a parking spot, exited the vehicle, and walked towards the side entrance of the building. At that time, Mr. Vick was approached by officers and placed under arrest.

Once placed under arrest, the police surveilled the Nissan Altima that Mr. Vick drove to the location. A few hours after Mr. Vick's arrest, Jamie Warner arrived and drove that Altima

---

[1] The facts contained herein are not admitted hereby and are assumed arguendo for the purpose of this memorandum.

out of the parking lot.  At the time that Mr. Warner took the Altima, after 11;00 a.m., Mr. Vick had already been taken into custody and transported from the location.

## ARGUMENT

Reasonableness of a seizure under the Fourth Amendment is based on an objective standard.  See Horton v. California, 496 U.S. 128, 138 (1990). As a result, generally the subjective motivations may not be considered in evaluating the constitutionality of a motor vehicle stop.  See Whren v. United States, 517 U.S. 806, 809-10 (1996). That being noted, the issue of over policing of minority populations continues to resurface in cases before the Federal Courts.  See e.g. Illinois v. Wardlow, 528 U.S. 119, 132 (2000) (Stevens, J., concurring in part, noting that flight may not always be indicative of guilt); Utah v. Strieff, 136 S. Ct. 2056, 2069 (2016) (Sotomayor, J., dissenting, noting "[the] officer does not even need to know which law you might have broken so long as he can later point to any possible infraction–even one that is minor, unrelated or ambiguous…")

In this case, police had no basis to search the Altima at the time of Mr. Vick's arrest. The troopers walked around the Altima several times looking inside, but there was no contraband in plain view.  Knowing they had no basis for a search of the car in the parking lot, they waited. They found justification for a motor vehicle stop and search, and returned to the parking lot to wait for the vehicle to be moved.  The troopers observed Jamie Warner arrive and operate the motor vehicle.

According to the troopers, the Altima was not properly registered and/or insured.  Upon its departure from the parking lot in Uxbridge, police followed the car and stopped it.  They did not place Mr. Warner under arrest for unlicensed operation of a motor vehicle, but rather elected

to let him leave the motor vehicle stop and would later "summons" him. Therefore, the subsequent search of the car could not be a search incident to arrest.

The officer's inspection of the car exceeded the constitutionally permissible bound of an inventory search. As an exception to the warrant requirement of the Fourth Amendment of the United States Constitution, "police may without a warrant, impound and search a motor vehicle so long as they do so in conformance with standard procedures of the local police department and in furtherance of a community care taking purpose such as promoting public safety or the efficient flow of traffic.'" United States v. Torres, 828 F. 3d 1113, 1118 (9th Cir. 2016). The purpose of such search is to "produce an inventory" of the items in the car in order "to protect an owner's property while it's in the custody of the police, to insure against claims of lost stolen or vandalized property, and to guard the police from danger." Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L. Ed. 2d (1990). Thus the purpose of the search must be non-investigative; it must be "conducted on the basis of something other than suspicion of evidence of criminal activity." Torres, 828 F.3d at 1118. The search can not be a "ruse for a general rummaging in order to discover incriminating evidence." See Wells, 495 U.S. at 4.

The officer in this case impounded and searched the car Mr. Warner was driving not for any legitimate inventory purpose, but rather as a pretext to look for evidence of wrongdoing. This can be seen plainly on the body worn camera footage where Trooper Dolan immediately goes to the trunk of the car searching the jacket he saw Mr. Warner carry into the trunk. Officers' actions learning up to the stop and search of the vehicle and their conduct in carrying out the search shows that they were subjectively motivated by an improper desire to find incriminating evidence against Vick. See e.g. Ashcroft v. al-Kidd, 563 U.S. 731, 736 (2011); United States v. Hellman, 556 F.2d 442, 443-444 (9th Cir. 1977)(an inventory search conducted "for an

investigatory police motive" is invalid).

The troopers orchestrated this traffic stop specifically so that they would be able to impound and search the vehicle. The troopers had an objectively sound reason to have the car towed: the vehicle's registration and insurance was inactive. However, the officers were using this basis to do an otherwise impermissible search. Troopers ran the license plate of the vehicle after the arrest of Vick. There was no post arrest basis to determine the registration status of the Altima, where it was parked on private property. The troopers' motive was not to protect Warner's property or the public, it was to search the backpack.

Furthermore, turning to the violation of the impound and inventory policies, there is evidence to suggest that the justification of an "inventory search" was merely a pretext for an investigatory search. See United States v. Johnson, 889 F.3d 1120, 1126 (9th Cir. 2018)("inquiry into subjective motivations for an inventory search is permissible…"). The troopers deliberately surveilled the vehicle until it left, knowing it was unlawful to operate on the public streets. Despite this, and despite any danger to the public, troopers allowed the vehicle to leave the parking lot before stopping and searching it. In fact, in Whren v. United States, the Supreme Court undertakes to distinguish between inventory searches (no probable cause) where the subjective motivation of the police is relevant and probable cause searches, where the subjective purpose of police is not relevant. See Whren v. United States, 517 U.S. 806, 811 (1996).

One needs read no further than the first sentence of the Massachusetts Tow Policy to uncover the subjective motivations of the troopers. "Public safety is the Department's primary concern…" However, the troopers displayed no concern for public safety in letting Mr. Warner drive without a license, operating an unregistered and uninsured motor vehicle onto a public way in order to effectuate a search.

## **CONCLUSION**

Wherefore, for the above reasons the firearm at issue in this case must be suppressed as it was discovered pursuant to an unlawful inventory search.

                                        Respectfully submitted,
                                        Charlie Vick

By:    */s/ Richard J. Farrell*   .
         Farrell|Fernandez, P.C.
         MA BBO# 638017
         47 Harvard Street
         Worcester, MA  01609
         508.393.3600
         Richard.Farrell@yahoo.com

Dated: April 18, 2024

CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing on this date.

                              */s/ Richard J. Farrell*
                              Richard J. Farrell

Dated: April__, 2024